07-4553-cv
Norex Petroleum v. Acess Industries

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT



August Term, 2008

Argued: February 4, 2009            Decided: September 28, 2010

Docket No. 07-4553-cv

---

NOREX PETROLEUM LIMITED,

*Plaintiff-Appellant,*

-v-

ACCESS INDUSTRIES, INC., RENOVA, INC., LEONARD BLA-
VATNIK, VICTOR VEKSELBERG, ALFA GROUP CONSORTIUM,
CROWN FINANCE FOUNDATION, CTF HOLDINGS, LTD., ALFA
FINANCE HOLDINGS, S.A., CROWN LUXEMBOURG HOLDINGS,
S.A.R.L., ELLIOT SPITZ, OAO TNK-BP HOLDING, SIMON KUKES, JOSEPH
BAKALEYNIK, LT ENTERPRISES LIMITED, SANDWELL
ENTERPRISES LIMITED, EAST-MOUNT PROPERTIES LIMITED,
ALETAR COMPANY, INC., ASTONS TRUSTEES, LIMITED,
BP P.L.C., LORD BROWNE of MADINGLEY, GILIAN CAINE,
SUSAN CUBBON, ROBERT DUDLEY, SIMON ELMONT,
JAMES GRASSICK, KELLAND, GERMAN KHAN,
ALEXEY KUZMITCHEV, OZERLA BUSINESS CORP.,
VALDIMIR PLOUZHNIKOV, ROBERT SHEPPARD, STAR PORT
LLC, TNK-BP LIMITED, WATFORD LIMITED, and TNK-BP
INTERNATIONAL LTD.,

*Defendants-Appellees.*

POOLER, KATZMANN, *Circuit Judges*, and PRESKA, *Chief District Judge*.[1]

The plaintiff alleges injury arising from the activities of an international criminal enterprise. The district court held that it could not properly exercise subject matter jurisdiction over the plaintiff's claims under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). Pursuant to the authority of *Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869 (2010), we hold that (1) the question of the justiciability of the RICO claims is properly one of whether the complaint adequately states a claim for relief; and (2) because the RICO statute lacks a clear statement of extraterritorial reach, plaintiff's claims are barred. Accordingly, we AFFIRM the district court's dismissal of the complaint, albeit on different grounds than below.

---

PETER J.W. SHERWIN (Eric H. Blinderman, *on the brief*), Proskauer Rose LLP, New York, NY.

BRUCE S. MARKS (Maria Temkin, *on the brief*), Marks & Sokolov, LLC, Philadelphia, PA.

*Attorneys for Plaintiff-Appellant.*

OWEN C. PELL, White & Case LLP, New York, NY.

*Attorney for Defendants-Appellees.*

PER CURIAM:

The issue before us is whether a United States federal court can properly hear a claim under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, arising from allegations of a conspiracy which primarily involves foreign actors and foreign acts. Applying the Supreme Court's decision in *Morrison v. National Australian Bank Ltd.*, 130 S. Ct. 2869 (2010), we hold that this issue is properly considered as a question of whether the

---

[1] The Honorable Loretta A. Preska, Chief United States District Judge for the Southern District of New York, sitting by designation.

complaint states a claim for which a United States federal court can provide relief, not as a question of whether the court possesses subject matter jurisdiction to hear the claim. *Morrison* also holds that absent an express intention by Congress of extraterritorial effect, a statute applies only domestically. *Id.* at 2877-78. As RICO "is silent as to any extraterritorial application," *North South Finance Corp. v. Al-Turki*, 100 F.3d 1046, 1051 (2d Cir. 1996), we affirm the district court's dismissal of plaintiff's complaint, albeit on different grounds.

## FACTS

According to the first amended complaint, which is the operative complaint on this appeal, this case involves "a massive racketeering scheme to take over a substantial portion of the Russian oil industry." (¶ 1)[2] Specifically, plaintiff Norex Petroleum Limited ("Norex") alleges that defendants conspired to take "control of Yugraneft, a Russian oil company, illegally obtaining much of Norex's ownership of Yugraneft and reducing it from the controlling majority shareholder to a powerless minority shareholder." (¶ 1) Norex alleges that, as a result, it "has lost the vast portion of its interest in, and therefore control of, Yugraneft, which has an estimated value in excess of $500 million, and has not been paid millions of dollars in dividends." (¶ 11) Somewhat in the manner of one of the great Russian novels of the nineteenth century, the first amended complaint is heavily laden with characters and incident, laid out more fully in the previous opinions in this case, familiarity with which is presumed. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 304 F. Supp. 2d 570 (S.D.N.Y. 2004) (*"Norex I"*); *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146 (2d Cir. 2005), *cert. denied*, 547 U.S. 1175 (2006); *Norex*

---

[2] The first amended complaint, the allegations of which are assumed to be true for the purposes of the present discussion, will be cited by paragraph number.

*Petroleum Ltd. v. Access Indus. Inc.*, 540 F. Supp. 2d 438 (S.D.N.Y. 2007) (*"Norex II"*).

In sum, Norex alleges that the defendants participated in a widespread racketeering and money laundering scheme with the goal of seizing control over most of the Russian oil industry through the use of Russian oil companies including Tyumen Oil Company ("TNK") and Yugraneft. (¶¶ 1, 4.) Norex further alleges that defendants committed numerous acts in the United States in furtherance of its scheme that constitute racketeering within the meaning of RICO, including mail and wire fraud, money laundering, Hobbs Act violations, Travel Act violations and bribery. (¶¶ 261-321.) Norex alleges that as a result of this scheme, its majority ownership stake in Yugraneft and of certain quantities of oil owed to it by Yugraneft and other Russian oil entities was stolen from it through a series of unlawful actions that included bribery of Russian governmental officials and corrupt Russian bankruptcy proceedings.

Norex's initial complaint in this action was filed in February 2002. The defendants subsequently moved for dismissal of the complaint on grounds of forum non conveniens, a motion the district court granted. *Norex I*, 304 F. Supp. 2d at 581. Norex appealed, and this Court vacated the district court's ruling. *See Norex Petroleum*, 416 F.3d at 154-56.

On remand, the defendants filed a joint motion to dismiss for lack of subject matter jurisdiction on the grounds that Norex could not properly raise a RICO claim "because the principal actions and events underlying [its] claim occurred outside of the United States." *Norex II*, 540 F. Supp. 2d at 440. Norex argued that RICO's extraterritorial reach was properly considered under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Relying on our decision in *North South Finance Corp. v. Al-Turki*, 100 F.3d 1046 (2d Cir. 1996), the district court held that existing Second Circuit precedent clearly treated the extraterritorial reach of RICO as a question

4

of subject matter jurisdiction. *Norex II*, 540 F. Supp. 2d at 441. It then granted defendants' motion to dismiss. This appeal followed.

On June 24, 2010, while this case was sub judice before this Court, the Supreme Court issued *Morrison v. National Australian Bank*, 130 S. Ct. 2869 (2010). *Morrison* rejected the "conduct and effect" test traditionally used by the Second Circuit and other courts to determine a statute's extraterritorial application in favor of a bright-line rule: absent a clear Congressional expression of a statute's extraterritorial application, a statute lacks extraterritorial reach. *Id.* at 2877. The parties submitted supplemental briefing discussing *Morrison's* application to the case at hand, and we find additional oral argument is not necessary.

## ANALYSIS

We review de novo the district court's dismissal of Norex's complaint for lack of subject matter jurisdiction. *See Capital Ventures Int'l v. Republic of Arg.*, 552 F.3d 289, 293 (2d Cir. 2009).

In *Morrison*, the Supreme Court considered whether the Securities and Exchange Act of 1934 § 10(b) provided a cause of action to foreign plaintiffs suing foreign and American defendants in courts of the United States. *Morrison*, 130 S. Ct. at 2876-77. First, *Morrison* determined that the question of a statute's extraterritorial reach is properly analyzed as a merits question pursuant to Fed. R. Civ. P. 12(b)(6), not as a question of subject matter jurisdiction raised by Fed. R. Civ. P. 12(b)(1). *Id.* Accordingly, we find the district court erred in dismissing Norex's first amended complaint for lack of subject matter jurisdiction. Rather, the analysis of RICO's extraterritorial reach must be conducted under the auspices of Fed. R. Civ. P. 12(b)(6).

5

Rather than remand to the district court - and in keeping with the spirit of *Morrison* - we accept the invitation of the parties in their supplemental briefing to consider the question of whether dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) without first remanding. *Id.* at 2877.

*Morrison* wholeheartedly embraces application of the presumption against extraterritoriality, finding that "unless there is the affirmative intention of the Congress clearly expressed to give a statute extraterritorial effect, we must presume it is primarily concerned with domestic conditions." *Id.* at 2877-78 (internal quotations and citation omitted). The *Morrison* Court rejected various tests devised over the years to divine a statute's extraterritorial application in favor of a bright line rule: "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Id.* at 2878.

Our Court's precedent holds that "RICO is silent as to any extraterritorial application." *Al-Turki*, 100 F.3d at 1051. While Norex urges us to consider this statement dicta, we cannot do so. The finding that RICO is silent as to its extraterritorial application is a key holding of the opinion, because it is only upon finding RICO silent as to its extraterritorial application that the *Al-Turki* court turned to its now-abrogated analysis of RICO's extraterritorial application under the conduct and effects test. *Id.*

Even if we were to revisit *Al-Turki*, Norex's arguments are unavailing. First, Norex argues that RICO § 1962(a)-(d) applies to "any enterprise which is engaged in, or that activities of which affect, interstate or foreign commerce." (¶¶ 322-381) *Morrison* forecloses that argument, noting that "we have repeatedly held that even statutes that contain broad language in their definitions of commerce do not apply abroad." 130 S. Ct. at 2882. *Morrison* similarly

6

forecloses Norex's argument that because a number of RICO's predicate acts possess an extraterritorial reach, RICO itself possesses an extraterritorial reach. *Id.* at 2882-83 (noting that while Section 30(b) of the Exchange Act, 15 U.S.C. § 78dd(b), can be interpreted to apply abroad, "the presumption against extraterritoriality operates to limit that provision to its terms"). Finally, contrary to Norex's claims, simply alleging that some domestic conduct occurred cannot support a claim of domestic application. "[I]t is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States." *Id.* at 2884 (emphasis in the original). The slim contacts with the United States alleged by Norex are insufficient to support extraterritorial application of the RICO statute. We have considered the remainder of Norex's claims and find them without merit.

## CONCLUSION

We **AFFIRM** the district court's dismissal of this action, albeit on different grounds than below.